UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANTHONY MACHIAVELLI, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CAPT. HAROLD ABBOTT, et als., )<br>)<br>Defendants ) | Docket No. 15-cv-340 |

**MOTION FOR SUMMARY JUDGMENT**

Pursuant to F. R. Civ. P., Rule 56(a), defendants move for summary judgment. As grounds for this motion, defendants assert that there is no issue of material fact and that defendants are entitled to judgment as a matter of law. Specifically, defendants state that, on the undisputed facts, defendants did not retaliate against the plaintiff for filing a judicial appeal of a disciplinary decision or for filing the instant lawsuit; that plaintiff failed to exhaust available administrative remedies with regard to his claim that defendants unlawfully retaliated against him; and that any violation of due process in the imposition of a $75 monetary sanction was rectified when, during plaintiff's petition for judicial review, the Department of Corrections voluntarily reversed its decision and restored the money taken.

**Memorandum in Support of Motion**

**Facts and Procedural Background**

The following recitation of facts is based upon defendants' statement of material facts filed herewith:

1

Anthony Machiavelli, a prisoner incarcerated at the Maine State prison, brings a number of claims arising from a prison disciplinary proceeding that occurred in 2014. On September 26, 2014, defendant Antonio Mendez, the manager of the close custody unit where Machiavelli was housed, wrote a disciplinary report charging Machavelli with the disciplinary infraction of "Interference" for encouraging other prisoners in the unit to move slowly while going to receive their medications in the medication line. The disciplinary report indicates that Machiavelli did this deliberately in order to disrupt the operation of the unit. Mendez considered this a serious offense, as Machiavelli could have created an incident of widespread disobedience among the close custody prisoners.

A disciplinary hearing was held on October 24 before defendant Harold Abbott. The hearing officer found Machiavelli guilty based on the disciplinary incident report. He imposed sanctions of 10 days' disciplinary restriction, 10 days' loss of good time and a $75 fine. Pursuant to the Department's disciplinary policy, Machiavelli appealed the finding. His appeal was reviewed by the warden's designee, defendant Deputy Warden Troy Ross, who summarily affirmed Abbott's decision on November 13.

Machiavelli filed a petition for judicial review of the final disciplinary decision pursuant to the Maine Administrative Procedures Act, 5 M.R.S. § 11001, et. seq. and M. R. Civ. P. Rule 80C in the Knox County Superior Court.[1] The petition was served by certified mail on the Department of Corrections and on the Office of the Attorney general on November 14, 2014. The court dealt with preliminary motions seeking a stay and modification of the record and issued a briefing schedule on January 7, 2015. Upon consideration of Machiavelli's brief and the administrative record, the Attorney General's office advised the Department to reverse its

---

[1] It appears that Machiavelli may have sent his appeal to the court before Ross's final decision was issued. His petition for review is dated November 12, although it was not docketed by the court until November 20.

decision due to several procedural irregularities.  The Department dismissed the write-up, restored Machiavelli's lost good time and reimbursed the monetary sanction and Machiavelli's court filing fee.  As required by statute, it also expunged the disciplinary record.  The Department then filed a motion in the Superior Court to dismiss the petition for judicial review as moot.  The court granted this motion over Machiavelli's objection.  At Machiavelli's request, the court also ordered the Department to pay some additional costs.

Prior to the disciplinary write-up, Machiavelli was employed as a unit plumber.  As Unit Manager, Mendez considered prison employment a privilege, not a right, and prisoners were generally allowed to keep their jobs conditioned on good behavior. At the time, it was Mendez's practice to suspend the employment of a prisoner charged with a disciplinary infraction until a final decision was made in the prisoner's disciplinary case.  If the disciplinary charge was upheld, Mendez would terminate the prisoner's employment.

After Machiavelli's discipline was upheld by defendant Ross, Mendez fired Machiavelli from his plumbing job.  Mendez made the decision to terminate Machiavelli's job based upon the serious misconduct evidenced by the disciplinary write-up.  At the time he took this action, Mendez was not aware that Machiavelli had filed a petition for judicial review of the disciplinary decision.

In his initial complaint in this court, Machiavelli alleged a number of due process violations in connection with the disciplinary proceeding, including an incomplete and altered record and the failure of the hearing officer to call witnesses requested by Machiavelli.  He also alleged that "…plaintiff was fired from his paying position as the close unit plumber by U.M. Mendez as a result of plaintiff's disciplinary guilty finding being upheld by Deputy Warden Troy Ross." *Complaint, Document 1, ¶ 32.*  He made the same or similar allegations in

3

correspondence to Ross, in a grievance he filed over the firing, and in a letter to the Attorney General's office. It is only in his amended complaint in this suit, filed over a year after the disciplinary proceeding, that Machiavelli alleges for the first time that the termination of his employment was in retaliation for his seeking judicial review of the disciplinary decision. *Amended Complaint, Document 25, ¶ 32.*

In an addendum to his initial complaint, Machiavelli claimed that, in retaliation for filing this lawsuit, he was transferred from the close unit, where he occupied a single cell, to the medium unit, where he was forced to double-bunk, a situation made more difficult because of his medical condition of a colostomy. The transfer was short-lived, as Machiavelli threatened to throw around the contents of his colostomy bag after one day in the medium unit. He was placed on emergency observation status and transferred back to a single cell in the close unit, where he continues to reside.

In January, 2015, the unit team, including Mendez, performed an annual review of Machiavelli's status. Although the team recommended that Machiavelli remain classified as close custody, their recommendation was overridden by the Department's classification director, who classified Machiavelli as medium custody.

Once reclassified, Machiavelli became eligible for a transfer to the medium unit. For some months, the prison administration had attempted to transfer as many eligible prisoners as possible from the close unit to the medium unit, where more prisoners were required to share cells. This policy was based on an increase in the prison's population and staffing needs. Mendez would receive instructions on a weekly basis as to the number of prisoners to be transferred. On July 17, 2015 Mendez selected eleven prisoners, including Machiavelli, to be

4

transferred to the medium unit.  Machiavelli's housing assignment in the medium unit was determined by Anthony Cartlidge, the medium unit manager.

At the time Machiavelli was selected for the transfer, Mendez was not aware that Machiavelli had filed a federal lawsuit. Machiavelli filed a grievance about being transferred and forced to double-cell.  In the grievance, he did not attribute these actions to retaliation by Mendez.[2]

Upon review of the initial complaint, the magistrate judge recommended dismissal of Machiavelli's claims that his due process rights were violated by the disciplinary hearing or the attempt to move Machiavelli to a double cell, observing that neither the loss of a prison job nor the double-celling constituted an atypical and significant hardship in the context of everyday prison life, such that due process protections were not implicated by these actions. (*Recommended Decision, Document 9, p. 6.)* However, the magistrate recommended that the complaint be allowed to proceed on the retaliation claim set forth in the addendum, i.e., that Machiavelli was forced to transfer to a double cell in retaliation for his filing a federal lawsuit against the defendants. *Id., p. 7.*

Machiavelli was allowed to amend his complaint to assert a number of new causes of action and name additional defendants.  Upon initial review of the amended complaint, the magistrate judge recommended that the case be allowed to proceed on Machiavelli's additional claim that he was fired from his prison job in retaliation for filing a state court petition for judicial review of the disciplinary proceeding. *Recommended Decision, Document 28, p. 7.*  The court noted that this claim was stated only as to defendant Mendez, but that Warden Randall

---

[2] The complaint was not filed in this court until August 20, 2015.  The complaint purports to have been signed on July 13, but the addendum attached to it (in which Machiavelli suggests a retaliatory motive for the transfer)  is dated July 31.  In a letter accompanying the August 20 filing, Machiavelli claims to have mailed the complaint to the court on August 6, only to have it returned to him as undeliverable.

Liberty should be allowed to remain as a defendant in the suit as the subject of possible injunctive relief. *Id.*

Finally, Machiavelli filed a motion to supplement the pleadings, which the court treated as a second motion to amend the complaint. In his ruling on this motion, the magistrate judge reiterated his previous conclusions that plaintiff had not made out a due process claim with regard to the loss of his prison job or the sanctions imposed in the disciplinary proceeding, albeit with one exception. Relying on a recent unpublished decision of the First Circuit Court of Appeals (*Coombs v. Welch,* No. 15-1776 (1st Cir. May 9, 2016)), the magistrate ruled that Machiavelli be allowed to proceed on the claim that he was deprived without due process of a $75 monetary sanction. The court recognized as the sole factual predicate supporting that claim Machiavelli's allegations that defendant Abbott, the hearing officer, refused to call witnesses requested by Machiavelli and did not explain this refusal on the record; and that defendant Ross, as the warden's designee reviewing the disciplinary decision, did not rectify this error. *Memorandum of Decision, Document 57, pp. 11, 13.*

Thus, the three claims remaining for disposition in this case are:

1. The claim that defendant Mendez retaliated against the plaintiff by firing plaintiff from his prison job because plaintiff filed a state court petition for judicial review of the disciplinary decision.

2. The claim that defendant Mendez retaliated against the plaintiff by transferring him to the medium custody unit and forcing him to double bunk because plaintiff filed this federal lawsuit.

3.  The claim that defendants Abbott and Ross deprived plaintiff of $75 without due process by failing to call witnesses at the disciplinary hearing and not explaining their reasons for the refusal.

**Argument**

**1.  On the undisputed facts, defendant Mendez did not retaliate against Machiavelli for exercising his constitutional rights.**

In order to proceed on a retaliation claim, a prisoner must allege facts sufficient to show that he engaged in protected activity, that prison officials took an adverse action against him, and that there was a causal link between the former and the latter.  *Hannon v. Beard*, 645 F. 3d 45, 48 (1st Cir. 2011).

> Simply adding an allegation that [prison officials] acted out of retaliatory motives is easy to do, but it is not enough.  It is, in fact, because of the ease with which a retaliation claim may be fabricated that courts approach prisoners' claims of retaliation with skepticism and particular care.

*Dolberry v. Levine*, 567 F. Supp. 2d 413, 420-421 (W.D.N.Y. 2008) (citations and quotations omitted.) In the context of a retaliation claim, "virtually any action taken against a prisoner by a prison official – even one not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed act."  *Id.; c.f., Hannon v. Beard, supra* (courts must insist that retaliation claims are "bound up in facts, not in the gossamer strands of speculation and surmise.")

The adverse retaliatory action must be such as would deter a person of ordinary firmness from continuing to engage in the constitutionally protected conduct. *Brown v. Crowley*, 312 F. 3d 782 (6th Cir. 2002)  *De minimis* reactions to protected speech – "minor annoyance of inconveniences that impose only a few days' discomfort, a single minor sanction or an otherwise constitutional restriction"-   will not satisfy the "adverse action" requirement.  *Cole v. Thyng*,

7

2011 WL 6020804, *15 (D. N.H. 2011), *citing Morris v. Powell*, 449 F. 3d 685, 685-686 (5th Cir. 2006).

"It is only intuitive that for protected conduct to be a substantial motivating factor in a decision, the decision makers must be aware of the protected conduct." *Ambrose v. Township of Robinson, Pa.*, 303 F. 3d 488, 493 (3d Cir. 2002); *c.f., Mincy v. Chmielewski*, 2007 W.L. 707344, *6 (M.D. Pa.) (no evidence of causation where nothing in record showed that defendant prison officials were aware that prisoner had sent letters to outside agency and advocacy group); *Barnes v. County of Monroe*, 85 F. Supp. 3d 696, 732-733 (W.D.N.Y. 2015) (complaint failed to state claim of retaliation where plaintiff failed to allege facts showing that defendants had knowledge of protected activity.)

### a. Termination of Machiavelli's prison job

In his affidavit, defendant Mendez establishes that he fired Machiavelli from his prison job due to the serious misbehavior that Machiavelli engaged in, as evidenced by the disciplinary write-up. In Mendez's view, holding a prison job, especially one that paid as well as the unit plumber position, was a privilege accorded to Machiavelli, one that could be lost due to a disciplinary infraction. It was only after the hearing officer's findings were affirmed on appeal that Mendez terminated Machiavelli's employment.

Mendez's testimony regarding his motivation for firing Machiavelli is consistent with Machiavelli's own statements on the matter. In a grievance he filed on June 24, 2015, Machiavelli stated, "I was only fired because I was found guilty for the report and for no other reason." In a letter to Deputy Warden Ross dated August 29, 2015, Machiavelli states: "I was fired by U.M. Mendez for no other reason other than your denial of my <u>disciplinary appeal</u>." (Emphasis in original.) In a letter to the Attorney General's office, he states: "Another factor is

8

that U.M. Mendez only fired me because I was found guilty of a disciplinary infraction and was upheld by the Deputy Warden, had I prevailed I would not have lost my job, and that was exactly why Mendez waited for my appeal to come back." Machiavelli makes the same statement in his initial complaint: "On December 5, 2014 plaintiff was fired from his paying position as the close unit plumber by U.M. Mendez as a result of plaintiff's disciplinary guilty finding being upheld by Deputy Warden Troy Ross." It was not until over a year later that Machiavelli claimed the firing was in retaliation for his state court petition seeking review of the disciplinary decision.

Thus, it was clear both in Mendez's mind as well as Machiavelli's that the adverse action taken by Mendez was due to the final internal decision affirming the hearing officer's finding that Machiavelli engaged in the conduct charged, and not the fact that Machiavelli subsequently filed a court action seeking judicial review of that decision. Mendez's decision is perfectly consistent with the Department's disciplinary policy, which states:

> Conduct constituting a disciplinary violation may result in changing a prisoner's custody level, housing status, and/or programs, or the taking of any other action based on a determination that such action is in the interest of the prisoner, in the interest of the prisoner population, or in the interest of safety, security or orderly management of the facility, regardless of whether the disciplinary process is initiated and, if initiated, regardless of whether the conduct leads to an informal resolution or formal resolution of the violation. A dismissal or a finding of not guilty does not preclude taking any such action. Such action is not in the nature of punishment.

DOC Policy 20.1, Prisoner Discipline, Procedure F.

Moreover, Mendez's affidavit makes it clear that he was not aware that Machiavelli had filed a petition for judicial review at the time he fired Machiavelli. There was no reason for Mendez to be aware of this fact at the time. Other than writing up the initial disciplinary report and providing a statement to the hearing officer, Mendez was not involved in the disciplinary decision. The petition for judicial review was served on the Department of Corrections and the

Office of the Attorney General. There was no reason why Mendez would have been contacted for any additional information or otherwise been made aware of the filing of the petition, as the Superior Court's review of this final agency action is based on the written record established at the hearing. 5 M.R.S. § 11006(1).

### b. Transfer to double cell

As established by Mendez's affidavit testimony, the decision in July of 2015 to transfer Machiavelli from the close unit, where he occupied a single cell, to the medium unit, where he was subject to being double-celled, was motivated by a general effort at the Maine State Prison at that time to move as many prisoners as were eligible into medium custody. That effort was in turn based on an increase in the prison population and staffing considerations.

Machiavelli had been classified to medium custody by Scott McCaffery, the Department's classification director, on February 3, 2015. In doing so, McCaffery overrode the initial recommendation of the unit team, including Unit Manager Mendez, that Machiavelli remain classified to close custody. Thus, if Mendez's recommendation had been followed, Machiavelli would not have been eligible for transfer to the medium unit, where he was subject to being double-celled. In addition, although Mendez was aware that Machiavelli was subject to being double-celled in medium, the decision as to Machiavelli's cell assignment was made by the medium unit manager, Anthony Cartlidge.

Mendez's testimony also establishes that he was not aware that Machiavelli had filed a federal lawsuit against him at the time the attempt to transfer Machiavelli took place, so the filing of the lawsuit was not a factor in his decision to transfer Machiavelli. Rather, the decision was based on a number of factors, including the fact that Machiavelli had continued to reside in

the close unit for several months after he became eligible for medium custody due to the change in his classification.  Machiavelli was one of a group of eleven close unit prisoners who were transferred on the same day, so it cannot be concluded that he was singled out for transfer by Mendez.

Moreover, on the established facts of this case, the aborted attempt to transfer Machiavelli to a double cell cannot be said to have constituted "adverse action" sufficient to deter a reasonable prisoner from the exercise of his First Amendment rights.  Machiavelli only spent one night in the medium unit before his own misconduct required him to be removed and placed back in a single cell in the close custody unit, where he remains today.

### 2. Plaintiff failed to exhaust available administrative remedies with regard to his claim that defendants unlawfully retaliated against him.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(1)(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The exhaustion requirement applies to all claims arising from conditions of confinement.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  A finding that plaintiff failed to exhaust administrative remedies is dispositive of other claims in the case.  *Id.* at 16.  The issue of exhaustion should be decided prior to a hearing on the merits of the case, and a motion for summary judgment is an appropriate vehicle with which to do so.  *Albino v. Baca*, 747 F. 3d 1162, 1170 (9th Cir. 2014).

In this case, Machiavelli filed a grievance over the fact that he lost his prison job, even when the decision was made to voluntarily dismiss the disciplinary report after Machiavelli filed a petition for judicial review.  However, nowhere in the initial grievance or in the first- or

second-level appeals did Machiavelli assert that he was fired in retaliation for exercising his constitutional right to seek judicial review of the decision.

Similarly, Machiavelli grieved the decision to transfer him to the medium unit, where he was double-celled, claiming that this action was contrary to his medical restriction. Missing from the grievance and appeals is any mention of a claim that the decision to transfer him was motivated by Mendez's wish to retaliate against him for filing a federal lawsuit.

Because Machiavelli failed to avail of himself of the available grievance process with regard to these two retaliation claims against Mendez, the claims should be dismissed.

**3. Any violation of due process in the imposition of a $75 monetary sanction was rectified when the Department of Corrections voluntarily reversed its decision and restored the money taken.**

In *Whitmore v. Hill*, 456 Fed. Appx. 726 (10th Cir. 2012), a state prisoner brought three separate §1983 actions arising from disciplinary proceedings in which fines of $10 each were imposed. The prisoner alleged violations of his due process rights claiming, among other things, that the disciplinary hearing officer denied him the opportunity to call witnesses. The hearing officer's decisions were upheld on administrative appeal, and the prisoner filed suits seeking judicial review. While the suits were pending, the state department of corrections overturned each of the decisions and eventually dismissed the charges and rescinded the fines. The state court then dismissed the pending suits as moot, a decision affirmed in the state court of appeals.

In upholding the summary judgment entered for prison officials in the federal district court, the Court of Appeals began by assuming that the imposition of a fine implicated the prisoner's property interests protected by the due process clause. The court then went on to hold:

> In each of these cases, the reversal of his disciplinary conviction, the refunding of any fine he had already paid, and the elimination of any unpaid fine cured any due process violation that may have occurred during the initial disciplinary hearing and thus afforded Whitmore the process he was due.

*Id.* at 729.

The court in *Whitmore* cited the Eighth Circuit's decision in *Ragland v. Lynch*, 113 F. 3d 875 (8th Cir. 1997). There, the Court of Appeals held that the existence of a state court review procedure that remedied an error in the administrative hearing constituted part of the due process available to the prisoner, noting that the due process clause applies to the *states*, and that a state court is as much an arm of the state as a prison administration. The court concluded, "In short, the system worked for [the prisoner]. Any defect in the [hearing] committee's process has been remedied and [the prisoner] has suffered no deprivation without due process." *Id.* at 877.

Initially, it is questioned whether Machiavelli is entitled to any due process protection in the circumstances of this case. Defendants recognize that the court is bound by the First Circuit's decision in *Coombs v. Welch,* No. 15-1776 (1st Cir. May 9, 2016) to the effect that imposition on a prisoner of a $75 fine is sufficient to trigger due process protections; however, they note that the Supreme Court has apparently never ruled whether its decision in *Sandin v. Conner,* 515 U.S. 472 (1995) extends to the deprivation of a property interest as well as a liberty interest. It does appear anomalous that the imposition of a lengthy stay in segregation (albeit in conditions not representing an atypical and significant hardship) constitutionally would require no procedural protections whereas the deprivation of a relatively small amount of money would require a hearing. In addition, Machiavelli was deprived of the $75 for a period of less than four months, and imposition of the sanction did not deprive him of all funds, as a substantial amount remained in his account after the money was taken.

Assuming that Machiavelli was entitled to some due process before being temporarily deprived of $75, it is clear that he received all of the process that was due. While the disciplinary finding was upheld by the warden's designee on appeal, Machiavelli was able to seek review of the decision under the Maine Administrative Procedures Act in the Superior Court. Upon further review of the case while it was pending in that forum, the Department decided to reverse course: it dismissed the discipline, restored Machiavelli's lost good time and reimbursed the monetary sanction. Machiavelli therefore received all of the relief he could have received if he had prevailed on his petition for review, and the court properly dismissed his petition as moot. Any flaw in the administrative process was remedied during the court's review of the Department's decision.

Although the Department's reversal of the disciplinary finding also moots any due process claim against Troy Ross as the individual designated to review Machiavelli's administrative appeal, even if the decision had not been reversed, Ross could not be held liable on these facts. In this regard, defendants respectfully suggest that the magistrate's reliance on *James v. Aidala*, 389 F. Supp. 2d 451 (W.D.N.Y. 2005), which in turn relies on the Second Circuit's formulation in *Colon v. Coughlin*, 58 F. 3d 865 (2d Cir. 1995) is misplaced.

Although *Colon* recognized that "personal involvement" of a supervisory official must be alleged in order to impose liability on him for his subordinates' constitutional violations, the court went on to list several types of conduct by the supervisor that could support liability. In dictum, the court stated that a supervisor's liability could be found where, "…the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong…" *Id.* at 873.

The viability of this dictum has been seriously questioned, especially since the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In *Sash v. U.S.*, 674 F. Supp. 2d 531 (S.D.N.Y. 2009), for example, the court explicitly stated that the categories of supervisory liability set forth in *Colon* did not survive *Ashcroft v. Iqbal*, and that liability for a subordinate's unconstitutional actions could be imposed only where the supervisor participated directly in the violation or created the policy or custom under which the unconstitutional practices occurred.  *Id.* at 543-544, *citing Bellamy v. Mt. Vernon Hospital*, 2009 WL 1835939 (S.D.N.Y. 2009).  In *Firestone v. Berios*, 42 F. Supp. 3d 403, 415-417 (E.D.N.Y. 2013), the court explicitly rejected a claim that a supervisor could be held liable under § 1983 for failing to respond to the constitutional violation of a subordinate, recognizing that that type of *Colon* supervisory liability had been abrogated by *Ashcroft v. Iqbal.* In this case, Ross's mere affirmance of Abbott's decision does not constitute the type of active involvement in the alleged due process violation that would give rise to supervisory liability.

## Conclusion

For the reasons stated above, defendants request that the court grant their motion and enter judgment in their favor.


October 26, 2016                                             \_\_/s/  James E. Fortin\_\_\_
                                                             James E. Fortin
                                                             Assistant Attorney General


Office of the Attorney General
Six State House Station
Augusta, ME 04333
626-8800

15

## NOTICE

Plaintiff's attention is directed to Local Rule 56(c), which requires that a party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts in conformance with the requirements of Local Rule 56(c). Facts contained in the moving party's statement of material facts may be deemed admitted for purposes of this motion unless properly controverted.

### Certificate of Service

The undersigned hereby certifies that he electronically filed the above document with the Clerk of Court using the CM/ECF system, and that he mailed a copy, postage paid, to the plaintiff at the following address:

Anthony Machiavelli
Maine State Prison
807 Cushing Road
Warren, ME 04864

October 26, 2016                         /s/ James E. Fortin
                                         James E. Fortin
                                         Assistant Attorney General