UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ANTHONY MACHIAVELLI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:15-cv-00340-JDL |
| | ) | |
| HAROLD ABBOTT, JR., et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

In this action, Plaintiff Anthony Machiavelli, currently incarcerated at the Maine State Prison, alleges that Defendants – Warden Randall Liberty, Deputy Warden Troy Ross, Captain Harold Abbott, Jr., and Unit Manager Antonio Mendez – violated his constitutional rights when they denied him due process of law in connection with certain disciplinary proceedings, and imposed sanctions in retaliation for Plaintiff's pursuit of judicial remedies.

The matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 61.) Through the motion, Defendants argue that Plaintiff failed to exhaust the available administrative remedies with respect to his retaliation claim, that the record lacks any evidence of retaliatory intent, and that Plaintiff's due process claim is moot because the decision about which he complains was subsequently reversed.

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court grant the motion.

**Factual Record**

In 2014, Plaintiff was classified as medium custody, and was assigned to and worked in the close custody unit managed by Defendant Mendez.[1] (Defendants' Statement of Material Facts (DSMF), ECF No. 62, ¶ 2; Plaintiff's Opposing Statement of Material Facts (POSMF), ECF No. 78, ¶ 2; Supp. Decl. of Antonio Mendez, dated Jan. 12, 2017, ECF No. 84-2, ¶ 2.) Plaintiff was employed on the close unit plumbing crew, for which work he was paid $200 each month. He was one of the more highly compensated prisoners at the prison. (DSMF ¶ 3.)

On September 26, 2014, based on information he received from a corrections officer that Plaintiff deliberately attempted to disrupt the distribution of medication to prisoners in the close unit by urging prisoners to slow down as they were released to receive their medication, Defendant Mendez wrote a disciplinary report charging Plaintiff with interference. (DSMF ¶ 5.) Plaintiff continued to work pending the conclusion of disciplinary proceedings that followed. (POSMF ¶ 4; Decl. of Antonio Mendez dated Jan. 1, 2017, ECF No. 84-1, ¶ 2; Plaintiff's Statement of Additional Material Facts (PSAMF), ECF No. 79, ¶¶ 2, 5 – 8.) According to Plaintiff, he actually worked "extra duty" in this time. (POSMF ¶ 12; PSAMF ¶ 26.)

Following a hearing on the disciplinary report on October 24, 2014, Defendant Abbott found Plaintiff guilty of the disciplinary violation. (DSMF ¶ 9; *see also* Summary

---

[1] Plaintiff's housing is reflected in an exhibit he filed in support of his statement of additional material facts. (PSAMF, Ex. 1, ECF No. 79-2, PageID # 650.)

of Hearing, ECF No. 62-3, PageID # 459.)   During the hearing, Defendant Abbott denied Plaintiff the opportunity to present the witnesses he requested. (PSAMF ¶ 25.)

> The Department's Prisoner Discipline Policy 20.1, Procedure F, states:
>
> Conduct constituting a disciplinary violation may result in changing a prisoner's custody level, housing status, and/or programs, or the taking of any other action based on a determination that such action is in the interest of the prisoner, in the interest of the prisoner population, or in the interest of safety, security or orderly management of the facility, regardless of whether the disciplinary process is initiated and, if initiated, regardless of whether the conduct leads to an informal resolution or formal resolution of the violation. A dismissal or a finding of not guilty does not preclude taking any such action.  Such action is not in the nature of punishment.

(DSMF ¶ 7.)   Upon the guilty finding, Defendant Abbott imposed sanctions of lost good time, a disciplinary restriction, and a $75 fine.[2]  (DSMF ¶ 9; *see also* Summary of Hearing, ECF No. 62-3, PageID # 459.)   The finding and sanction were affirmed administratively on November 13, 2014.  (Decision on Appeal, ECF No. 62-3, PageID # 478.)

Plaintiff filed a petition for judicial review in state court pursuant to Maine Rule of Civil Procedure 80C on November 20, 2014.  The petition was served on the Office of the Attorney General and the Maine Department of Corrections on November 14, 2014.  (*Id.* ¶ 11.)   Defendant Mendez terminated Plaintiff's employment on December 5, 2014.[3] (PASMF ¶ 20.)   Defendant Mendez maintains that he had no knowledge of the Rule 80C petition when he made his decision to terminate Plaintiff from the plumber position.

---

[2] On February 28, 2015, and March 11, 2015, a total of $75 was deducted from Plaintiff's prisoner trust account to satisfy the monetary sanction.  After the deductions, Plaintiff's account showed an available balance of $137.50.  (*Id.* ¶ 10.)

[3] Plaintiff's statement erroneously states the year as 2015.

3

(DSMF ¶ 8.)  Plaintiff, however, states he told Defendant Mendez that he had filed an action.  (POSMF ¶ 8.)

After Plaintiff filed his Rule 80C petition, the Department of Corrections, based on advice from the Attorney General's office, reversed its disciplinary decision and dismissed the disciplinary charge against Plaintiff.  The Department restored the good time, refunded the monetary sanction and reimbursed Plaintiff's court filing fee.[4]  (DSMF ¶ 12.)  On March 20, 2015, the Attorney General's office filed a motion to dismiss the petition for judicial review as moot.  On June 1, 2015, the state court granted the motion over Plaintiff's objection.  (*Id.* ¶ 13.)

The Maine Department of Corrections has in place a prisoner grievance policy that allows prisoners to "request administrative review of any policy, procedure, practice, condition of confinement, action, decision, or event that directly affects" the prisoner. (DSMF ¶ 15.) The Prisoner Grievance Policy provides that "[t]he prisoner shall state, using one grievance form only, as briefly and concisely as possible, the specific nature of the complaint, including all the persons and dates involved." (ECF No. 62-12, PageID # 522, ¶ 12.)

On June 24, 2015, Plaintiff filed a grievance in which he stated, "I was only fired because I was found guilty for the report and for no other reason."  (DSMF ¶ 16; Grievance

---

[4] On June 19, 2015, and July 6, 2015, Plaintiff's account was credited with refunds totaling $225, representing reimbursement of the previously imposed $75 sanction and reimbursement of the filing fee of $150 in Maine Superior Court.  (*Id.* ¶ 14.)  Although not explicitly stated, Plaintiff was not restored to his plumber position.  (*Id.*; PSAMF ¶ 17.)

Paperwork (six exhibits), ECF No. 62-13.) Plaintiff did not mention a claim of retaliation in the grievance. (*Id.*) The grievance process at the prison includes complaints for unlawful retaliation. (DSMF ¶ 15.) As part of the grievance, Plaintiff expressed a willingness to "accept a different job with the same pay of $200.00 per month." (PageID # 529.) In response to the grievance, Defendant Mendez noted that an informal resolution, which is the initial stage of the grievance process, was not available because Plaintiff was not entitled to reinstatement, but could apply for the position when available. (*Id.*) Grievance Review Officer Wendell Atkinson responded similarly to Plaintiff's level 1 grievance. (PageID # 530.)

In his appeal from the level 1 denial of his grievance, Plaintiff argued that the expungement of the guilty finding should result in his return to his work. He requested that he be reinstated with back pay. (PageID # 531.) The appeal was denied, and the reviewing officer determined that work supervisors have the authority to remove a prisoner from a work assignment. (PageID # 532.) In his appeal from the level 2 denial, Plaintiff contended that his "boss" had not fired him, but instead, after 71 days, fired him because he lost his disciplinary appeal. (PageID # 533.) On August 12, 2015, Commissioner Fitzpatrick denied the final appeal. According to Commissioner Fitzpatrick: "Termination from a work assignment has its own appeal process and, therefore, this matter is not grievable." (PageID # 534.)

Although Plaintiff was classified as a medium-custody inmate, he was assigned to the close unit in a single-occupancy cell, principally because he has a colostomy bag. (PSAMF ¶ 24; Client Classification Form, ECF No. 79-3, PageID # 651.) According to

5

Plaintiff, on July 13, 2015, he gave Defendants Abbott, Mendez and Ross a copy of his complaint in this matter before he filed it on August 20, 2015. On July 17, 2015, Plaintiff's housing classification was changed and he was moved to a double cell in the medium custody unit. (Addendum to Complaint, ECF No. 1-2, PageID # 21; POSMF ¶ 23.)[5] Defendant Mendez asserts that he was unaware of this federal case when he decided to transfer Plaintiff to the medium unit. (DSMF ¶ 23.)

Most prisoners who were transferred to the medium unit at the time were required to double-bunk, although the specific assignments were made by the medium unit manager. A number of prisoners, particularly those who had been accustomed to living in a single cell for a long time, voiced strong complaints about the change. (DSMF ¶ 21.) While Defendant Mendez asserts that Plaintiff's transfer in July 2015 was related to a decision to reclassify Plaintiff to medium custody in February 2015 (DSMF ¶ 22), Plaintiff in fact was already classified as medium. In addition, although Defendant Mendez stated that on July 17, 2015, he selected eleven prisoners, including Plaintiff, to be transferred to the medium unit (*id.*), for several months prior to Plaintiff's transfer, the prison administration had been making an effort to move as many eligible prisoners as possible from the close unit to the medium unit due to an increase in the number of prisoners at the prison and reductions in staff. (*Id.* ¶ 23.)

According to Plaintiff's records, he was in the medium unit for one night. He was "written up" because he threatened to throw the contents of his colostomy bag if he had to

---

[5] Plaintiff's complaint and the addenda attached to it are not verified. However, Plaintiff's opposing statement is sworn and notarized.

remain in a double-cell.  As a result of this incident, he was placed briefly in Emergency Observation Status and then returned to the close unit.  He has remained in a single cell in the close unit.  (*Id.* ¶ 24.)

Plaintiff filed a grievance based on the night he was required to double-bunk, but he did not assert that Defendant Mendez required him to double-bunk in retaliation for Plaintiff's participation in a protective activity.  (*Id.* ¶ 25.)  He asserted the reassignment was "discrimination" and "punishment."  (POSMF ¶ 25.)  The grievance process was exhausted, and ended when Commissioner Fitzpatrick denied Plaintiff's level 3 appeal on September 21, 2015.  (ECF No. 62-14.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'"  *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).  A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor.  *Perry v. Roy,* 782 F.3d 73, 77 (1st Cir. 2015).  If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be

denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)).  Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

## DISCUSSION

Plaintiff asserts the following claims:  (1) a due process claim based on the denial of his request to present certain witnesses during a disciplinary proceeding that resulted in a $75 monetary sanction; (2) a retaliation claim based on the decision to remove Plaintiff from his plumber position after Plaintiff filed a Rule 80C petition in state court; and (3) a retaliation claim based on the decision to transfer Plaintiff to the medium unit, and a double-bunk, after Plaintiff filed this federal court action.[6]

### A.  The Due Process Claim

Due process requires that an inmate who is to be deprived of an interest protected by the Due Process Clause first receive (1) advance written notice of the charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense, and (3) a written statement

---

[6] Although Plaintiff previously asserted additional claims against more defendants, the claims asserted are the result of the Court's review, pursuant to 28 U.S.C. §§ 1915 and 1915A, of Plaintiff's complaint and amended complaint (Amended Recommendation, ECF No. 9; Order Adopting Amended Recommended Decision, ECF No. 16; Recommended Decision on Amended Complaint, ECF No. 28; Order Adopting Recommended Decision, ECF No. 33), and the result of the Court's decision on Plaintiff's motion to supplement his complaint. (Memorandum of Decision, ECF No. 57.)

from the factfinder of the evidence relied upon and the reason for the disciplinary action. *See Superintendent v. Hill,* 472 U.S. 445, 454 (1985). There must also be "some evidence in the record" to support a disciplinary finding. *Id.*

Plaintiff alleges he was denied due process because he was not allowed to present material witnesses at the disciplinary hearing that resulted in a sanction of $75. Defendants argue the claim is moot because the Department of Corrections, within a period of four months while the matter was subject to judicial review in state court, expunged the disciplinary matter and restored the amount Plaintiff paid as a sanction. (Motion at 12 – 13.)[7]

The Fourteenth Amendment prohibits state deprivation of property or liberty without due process of law. "To establish a procedural due process claim under § 1983, a plaintiff must [demonstrate] that [he] was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." *Maymi v. P.R. Ports Auth.,* 515 F.3d 20, 29 (1st Cir. 2008). Ordinarily, a procedural due process violation is complete when a deprivation is imposed through an established state procedure that does not comply with constitutional procedural standards. *Godin v. Machiasport Sch. Dep't Bd. of Directors*, 831 F. Supp. 2d 380, 389 – 90 (D. Me. 2011); *see also Zinermon v. Burch*, 494 U.S. 113, 132 (1990) ("In situations where the

---

[7] Defendants also argue that the "atypical and significant hardship" standard of *Sandin v. Conner*, 515 U.S. 472 (1995), should apply to bar due process claims involving low-value monetary sanctions. Defendants do not cite any specific authority that would support this approach. The holding of *Sandin* is based on the limited liberty interest that a prisoner who is subject to a lawful sentence of incarceration has. *Id.* at 480, 483 – 84. While incarceration necessarily involves the loss of liberty, incarceration does not deprive a prisoner of access to the prisoner's funds in accordance with the institution's regulations.

State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.").

Postdeprivation remedies can in some situations cure a failure to observe procedural standards, but the situations are generally limited to "random and unauthorized" deprivations. *San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 480 (1st Cir. 2012). Where the deprivation is the product of an established state procedure, such as a prison disciplinary hearing overseen by an authorized state official, the official's failure to follow a procedural standard cannot be characterized as random and unauthorized. *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992).

Nevertheless, citing *Whitmore v. Hill*, 456 F. App'x 726 (10th Cir. 2012), and *Ragand v. Lynch*, 113 F.3d 875 (8th Cir. 1997), Defendants argue that Plaintiff's due process claim is moot because Defendants restored Plaintiff's funds and cured any alleged procedural violation in the context of state-provided direct judicial review. (Motion at 12 – 13.) The courts in *Whitmore* and *Ragand* reasoned that given the result of the subsequent process, the plaintiffs were not deprived of any interest without due process. *Ragan*, 113 F.3d at 877 ("Any defect in the committee's process has been remedied, and Ragan has suffered no deprivation without due process. It follows that he is not entitled to damages."); *Whitmore*, 456 F. App'x at 729 ("[T]he reversal of his disciplinary conviction, the refunding of any fine he had already paid, and the elimination of any unpaid fine cured any due process violation that may have occurred during the initial disciplinary hearing and thus afforded Whitmore the process he was due.").

10

The reasoning of the courts in *Whitmore* and *Ragan* is sound. Assuming, arguendo, that Plaintiff's inability to call witnesses at the disciplinary hearing constitutes inadequate predeprivation process, Plaintiff received constitutionally sufficient process from the State of Maine when the Department of Corrections, during the course of a direct judicial appeal, expunged the disciplinary matter and restored to Plaintiff the funds of which he was deprived. As with the plaintiffs in *Whitmore* and *Ragan*, Plaintiff was not deprived of an interest without due process. Accordingly, Defendants are entitled to summary judgment on Plaintiff's procedural due process claim.

**B.     Plaintiff's Retaliation Claims**

To support a claim of first amendment retaliation, an inmate must establish (1) that the inmate engaged in conduct protected by the First Amendment; (2) that the defendant took adverse action against the inmate because of the protected conduct; and (3) that the adverse action was more than de minimis, i.e., was sufficient to deter an inmate of ordinary firmness from exercising his or her first amendment rights. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *see also Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 82 (D. Me. 2013).

Defendants argue that the retaliation claims are barred because Plaintiff did not exhaust the available administrative remedies. Alternatively, they argue the record will not support a finding of retaliation.

Federal law requires a prisoner to exhaust the available administrative remedies before initiating a lawsuit based on 42 U.S.C. § 1983. Specifically, the Prison Litigation Reform Act provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Booth v. Churner*, 532 U.S. 731, 734 (2001) (affirming dismissal of action without prejudice based on prisoner's failure to completely exhaust available process even though the relief he sought was unavailable in that process). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

Because under the PLRA exhaustion is a precondition to filing suit, a plaintiff cannot proceed on a claim regarding prison conditions if the plaintiff initiates the lawsuit before the plaintiff has exhausted the available administrative remedies. *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 534 (7th Cir. 1999); *see also Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012) ("Since the PLRA makes exhaustion a precondition to *filing* a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency.").

"The Supreme Court held in *Jones v. Bock* that a prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion

12

requirement." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing *Jones v. Bock*, 549 U.S. at 218). The Department of Corrections' Prisoner Grievance Policy requires the prisoner to state, "as briefly and concisely as possible, the specific nature of the complaint, including all the persons and dates involved." (PageID # 522, ¶ 12.)

The generally accepted rule is that a prisoner has provided sufficient detail if the grievance "alerts the prison to the nature of the wrong for which redress is sought." *Id.* (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), and collecting additional supportive precedent from the Fifth, Sixth, and Tenth Circuits).[8] The standard is "unlikely to demand more information than prison procedures permit." *Id.* In particular, "[a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved." *Id.* "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.*; *see also Jones*, 549 U.S. at 219 (citing with approval *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("[T]he grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit")).[9]

---

[8] In *Strong*, the Seventh Circuit reasoned that, "[a]s in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief," but must simply "object intelligibly to some asserted shortcoming." 297 F.3d at 650. *See also Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (characterizing the *Strong* approach as "a sound one").

[9] By way of example, in *Griffin* the Ninth Circuit held that the plaintiff had not failed to exhaust by failing to use "deliberate indifference" terminology in his complaint, where "his problem concerned his unsatisfactory bunking situation," and that the plaintiff could notify prison officials of the problem without alleging that it "resulted from deliberate indifference." *Id.* The court, however, held that the plaintiff failed to exhaust by omitting relevant factual information, specifically the fact that officers were disregarding the medical order that the plaintiff receive a lower bunk. *Id.* at 1121. Because the "officials responding to his grievance reasonably concluded that the nurse's order … solved [the] problem," the plaintiff's repeated

>As articulated by the Second Circuit:
>
>Uncounselled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading.  Still, the PLRA's exhaustion requirement does require that prison officials be "afford[ed] ... time and opportunity to address complaints internally."  *Porter,* 534 U.S. at 524–25.  In order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.

*Johnson*, 380 F.3d at 697.

The gravamen of Plaintiff's grievance regarding the loss of his employment was that Defendant Mendez terminated his employment because of the adverse result of the disciplinary proceedings.  While Plaintiff argued he should be restored to the same or similar employment because the disciplinary determination was expunged, he did not allege any retaliatory motive.  In other words, even under a notice pleading standard, Plaintiff did not assert that Defendant Mendez terminated his employment because he engaged in a protected activity.

Plaintiff's grievance activity regarding his transfer to a medium custody shared cell also failed to notify Defendants that he claimed Defendant Mendez's decision to transfer him was retaliatory.  In his grievance paperwork, Plaintiff asserted the transfer constituted "discrimination" and "punishment."  Under the circumstances, a reasonable official would have understood "discrimination" to refer to Plaintiff's disability, i.e., the basis (colostomy) upon which Plaintiff asserted a right to a single cell, and would have understood

---

demands for a ladder to reach the top bunk did not provide sufficient information "to allow prison officials to take appropriate responsive measures."  *Id.* (quoting *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004)).

14

"punishment" to refer to Plaintiff's contention that he could not be punished for the underlying disciplinary matter. The grievance would not have notified Defendants that Plaintiff claimed his transfer was motivated by retaliation for Plaintiff's participation in a protected activity.[10]

The lack of any reference in Plaintiff's grievances to retaliation or to any facts that could reasonably suggest Plaintiff's grievances included a retaliation claim supports Defendants' exhaustion argument. Indeed, the Fifth Circuit determined that even "vague references to retaliation" in a grievance did not give prison officials sufficient notice of the basis for a retaliation claim. *Zebrowski v. U. S. Fed. Bureau of Prisons*, 558 F. App'x 355, 359 – 60 (5th Cir. 2014). Because Plaintiff's grievance activity did not "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit," *Johnson*, 385 F.3d at 522, Plaintiff failed to exhaust administrative remedies with respect to his retaliation claims.[11] Accordingly, Plaintiff cannot proceed on his retaliation claims.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' Motion for Summary Judgment. (ECF No. 61.) In particular, I recommend the Court dismiss

---

[10] Even if the reference to discrimination and punishment was enough to suggest to officials that they investigate whether Mendez had retaliated on the basis of Plaintiff's litigation activity, Plaintiff ultimately spent only one day in a shared cell. One day in a shared cell was not sufficiently adverse to chill a reasonably hardy, similarly situated prisoner's exercise of first amendment rights.

[11] In opposition to Defendants' motion, Plaintiff relies on his grievance paperwork to demonstrate exhaustion. In addition to failing to demonstrate proper exhaustion of his retaliation claims through that process, Plaintiff has not provided evidence that he exhausted administrative remedies through any other available process, such as a classification or transfer appeal process.

Plaintiff's retaliation claims pursuant to 42 U.S.C. § 1997e(a), and enter judgment for Defendants on Plaintiff's due process claim.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of April, 2017.